UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KIM H. HENNIG**
              Plaintiff,

**VERSUS**

**SMOOTHIE KING FRANCHISES, INC.,**
              Defendant.

CIVIL ACTION NO. 17-cv-1053

SECTION:

MAGISTRATE:

## COMPLAINT

The Complaint of Kim H. Hennig, a person of the full age of majority, brings this action for damages as a result of Defendant's violation of the American's with Disabilities Act ("ADA") pursuant to and 42 U.S.C. § 2000e *et seq*. (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991 ("Title VII").

**Plaintiff. PARTIES**

1.    Plaintiff, Kim H. Hennig ("Hennig") is a resident and citizen of the State of Connecticut and who presently resides at 47R Woodchuck Hill Road, West Simsbury, CT 06092. During her employment with Defendant, Plaintiff was a resident and citizen of the Parish of Jefferson, State of Louisiana.

2.    Defendant, Smoothie King Franchises, Inc. ("SKFI") is a Louisiana corporation with its principal place of business located at 2400 Veterans Memorial Boulevard, Suite 110, Kenner, Louisiana 70062. SKFI is a private employer with fifteen (15) or more employees on any given day of the year, and is engaged in an industry affecting commerce. At all relevant times, SKFI is an "employer" as defined by the ADA.

## II. JURISDICTION

3. Jurisdiction is asserted pursuant to the American's with Disabilities Act ("ADA") pursuant to 42 U.S.C. §§12101-12213 and 42 U.S.C. § 2000e et seq. ("Title VII"), as amended by the Civil Rights Act of 1991. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1343, in that this action arises under federal law.

4. Plaintiff voluntarily submits herself to the jurisdiction of this Court.

5. This Court has personal jurisdiction over Defendant pursuant to C.R.S. §13-1-124, because Defendant transacts business in the State of Louisiana.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), because the all of the events and transactions upon which this suit is based occurred in the State of Louisiana.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Hennig has timely and properly exhausted her administrative remedied by filing a timely Charge of Discrimination with the United States Equal Opportunity Commission ("EEOC") based upon grounds of disability and sex discrimination.

8. This lawsuit is timely filed within 90 days after Hennig's receipt of the Notice of Right to Sue from the EEOC dated November 14, 2016.

## IV. ALLEGATIONS OF FACT

9. Plaintiff is female, diagnosed with Parkinson's Disease during or around 2002.

10. As a result of her disability, Plaintiff displays a slight tremor and takes a medication to counteract mild short-term memory loss. With this medication, and with other minor efforts she personally undertakes to mitigate her disability (such as making frequent notes and keeping a notebook on Plaintiff at all times), she is able to perform all of the essential

elements of her job duties.

11. Plaintiff has over 35 years of experience in marketing and promotions.

12. SKFI hired Plaintiff as Vice President of Marketing on October, 2014, with a salary and bonus amounts based on reaching certain milestones.

13. At the time of her hire, Plaintiff had not disclosed her Parkinson's disease to SKFI. Plaintiff's hiring process involved a telephone interview with SKFI's Vice President of Human Resources, Dione Heusel (Vice President, Human Resources who is no longer with SKFI), and an in-person interview at SKFI on September 10, 2014 with Heusel, Thomas O'Keefe (President), Wan Kim (CEO), and Richard Peabody (CFO) which process covered the course of a day.

14. Plaintiff was then asked to attend a Grand Opening Event in Austin, TX and to provide an evaluation of the store opening, which Plaintiff provided. At the conclusion of this process, SKFI offered, and Plaintiff accepted, the position.

15. Plaintiff relocated to New Orleans, LA to accept this position.

16. SKFI provided Plaintiff job responsibilities that included WIGs, or "Wildly Important Goals" from which her job performance would be measured, and sales goals, upon which her bonus amounts would be calculated. In her few months with SKFI, Plaintiff earned the maximum first quarter bonus possible because Plaintiff was meeting or exceeding all her goals. Plaintiff was on track to meet or exceed her goals for the second bonus shortly before Plaintiff was terminated.

17. During her time with SKFI, Plaintiff did not receive warnings, notice of not meeting goals, or corrective action.

18. Plaintiff received one performance evaluation on or around February 2015 with

Tom O'Keefe, President, whose only specific criticism of her work performance was to site an example during a team meeting when Plaintiff had to consult her notes to provide a statistic to the management team.

19. During this meeting, President O'Keefe indicated that he wanted Plaintiff to have these figures on the top of her head and Plaintiff expressed to him that, with her Parkinson's, Plaintiff might have to consult her notes on such figures. Plaintiff urged to the President that this was not a factor in the effectiveness of the meeting (Plaintiff found the note immediately and confirmed it), nor did this affect her ability to perform the job.

20. The notion of having this type of data committed to memory was unusual, is not typically a requirement of this job function, nor was it ever previously communicated to Plaintiff as an important aspect of the job.

21. As this was his first notice of disability, Plaintiff then felt compelled to explain to President O'Keefe that Plaintiff had a medical condition that made rote memorization difficult for Plaintiff, and that in fact Plaintiff was taking prescription medication for it. Plaintiff told him that she carried all important data with Plaintiff to meetings, and was prepared at all times to provide information as needed.

22. When President O'Keefe learned of her disability, he became agitated and reiterated that Plaintiff would have to have significant statistics memorized, whether they were material or not.

23. This sole evaluation of her work performance during her entire tenure with SKFI lasted approximately 15 minutes.

24. From approximately February, 2015 to May, 2015, Plaintiff performed her job duties which included but was not limited to openings, store evaluations, release of a new

product to the menu line ("Nutty Supergrain"), and developing marketing plans for the Company and various franchisees.

25. Plaintiff believes that after President O'Keefe learned of her disability, he decided to terminate Plaintiff, but also recognized that he needed to retain her through the product launch period, after which time he would then promptly replace Plaintiff.

26. Upon information and belief, President O'Keefe made inquiries to other executives orally, by e-mail and by text messages, regarding Plaintiff's disability and a plan to terminate her because of her disability.

27. On May 27, 2015, very shortly after her role in the launching this new product had been completed, Plaintiff was called into a meeting and terminated.

28. Prior to her termination, President O'Keefe and SKFI never participated with Plaintiff in any form an interactive process, and never asked Plaintiff about any reasonable accommodations that Plaintiff might request or require.

29. Plaintiff's first and only quarterly bonus was paid in the maximum percent because Plaintiff was meeting or exceeding her goals.

30. Plaintiff was terminated one month prior to her second quarterly bonus.

31. At the time of her termination, Plaintiff had met all objective criteria for a maximum bonus as of the time of her termination.

32. During the termination meeting, President O'Keefe sited the only accommodation Plaintiff ever requested -- which was to be permitted to refer to her notes, which Plaintiff held in her hand during the one meeting in question – as the primary basis of her termination. The termination meeting lasted less than 5 minutes.

33. Plaintiff was the only woman on a 12-person leadership team. While Plaintiff

was meeting all her performance targets, there were men on the team who were not, yet Plaintiff was terminated.

34. Plaintiff has have been subject to disparate treatment on the basis of her disability and sex.

35. Plaintiff has made full-time and diligent efforts to obtain subsequent employment, on a national job search base. Her disability makes finding employment very difficult.

**FIRST CAUSE OF ACTION**
(Disability Discrimination under the ADA)

36. Hennig incorporates by reference her prior allegations.

37. Hennig had a qualifying disability within the meaning of the ADA.

38. Hennig informed Defendant of her disability.

39. Hennig requested a reasonable accommodation pursuant to the ADA.

40. There was an accommodation available that would have been effect and would not have posed an undue hardship on the Defendant.

41. The Defendant failed to provide this reasonable accommodation.

42. The Defendant terminated Plaintiff because of her disability.

43. Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

**SECOND CAUSE OF ACTION**
(Disparate Treatment on the Basis of Sex in Violation of Title VII)

44. Hennig incorporates by reference her prior allegations.

45. Defendants have engaged in intentional gender discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, the Plaintiff's termination.

46. Defendants' conduct violates Title VII.

47. Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige. Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

48. Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this court enter judgment in her favor and against Defendant and award her as follows:

1. That the Court order Defendants to reinstate Plaintiff's employment;

2. That the Court grant full front pay to the Plaintiff;

3. That the Court grant full back pay to the Plaintiff;

4. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

5. That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

6. That the Court grant Plaintiff all employment benefits he would have enjoyed had she not been discriminated and retaliated against;

7. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to Title VII, and/or 42 U.S.C. § 1988;

8. That the Court grant Plaintiff a jury trial;

9. That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct;

10. That the Court award all attorney fees and costs;

11. That the Court enter all awards with the applicable rate of applicable legal interest; and

12. That the Court grant Plaintiff all other relief the Court deems just and proper.

Dated this 6th day of February, 2017.

Respectfully Submitted,

**COUHIG PARTNERS, LLC**

*/Robert E. Couhig III*
Robert E. Couhig III (Bar Roll 29811)
Claire E. Pontier (Bar Roll 32025)
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Telephone:  (504) 588-1288
Facsimile:   (504) 588-9750
Email:  rcouhig@couhigpartners.com
            cpontier@couhigpartners.com

-- and --

William J. Kelly III (Bar Roll 21662)
KELLY & WALKER LLC
1512 Larimer Street, Suite 200
Denver, Colorado, 80202
(720) 236-1800 phone
(720) 236-1799 fax
Email:  wkelly@kellywalkerlaw.com

Attorneys for Plaintiff, Kim H. Hennig