UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIM H. HENNIG** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-01053** |
| **SMOOTHIE KING FRANCHISES, INC.** | **SECTION: "A" (4)** |

### ORDER

Before the Court is a **Motion to Compel Responses to Kim H. Hennig's First Set of Discovery Propounded on Smoothie King Franchises, Inc. and to Compel the Setting of Depositions. R. Doc. 25.** The motion is opposed. R. Doc. 37. Oral argument regarding the motion was heard on January 3, 2018.

### I.   Background

#### A.   Factual Summary

The instant action was filed on February 2, 2017, in which Kim Hennig ("Plaintiff"), who was formerly employed by Smoothie King Franchises, Inc. as Vice President of Marketing, alleges two causes of action: (1) That Smoothie King Franchises, Inc. ("Defendant") violated the Americans with Disabilities Act because Plaintiff has Parkinson's disease which is a qualifying disability, she informed the Defendant of the disability and requested a reasonable accommodation that would have been effective and posed no undue hardship on the Defendant, no reasonable accommodation was provided, and Plaintiff was terminated because of her disability; and (2) The Defendant engaged in gender discrimination in violation of Title VII, which caused Plaintiff to suffer loss of pay, benefits, and prestige, as well as causing mental and emotional distress. R. Doc. 1, pp. 2-7.

The Plaintiff seeks a reinstatement of her employment, full front and back pay, compensatory damages, punitive damages, all employment benefits she would have enjoyed but for the discrimination, expenses, and attorney's fees. R. Doc. 1, p. 7.

**B. Instant Motion**

The instant motion was filed on December 8, 2017. The Plaintiff indicates that there are four disputed issues identified by the motion: (1) The Defendant's general objections and almost all of the discovery responses being prefaced subject to general objections; (2) deficient individual interrogatory responses; (3) insufficient document production; and (4) the Defendant has not confirmed availability of its corporate deponents for a deposition pursuant to Rule 30(b)(6). R. Doc. 25-1 at pp. 4, 6, 7, 9.

The Defendant opposes the motion contending that: (1) its objections are legally sufficient; (2) the requests regarding other lawsuits and charges of discrimination are overbroad; (3) the requests for email production are overbroad, unduly burdensome, and not proportional to the needs of the case; and (4) the draft notice of deposition is overbroad, unduly burdensome, duplicative, and irrelevant. R. Doc. 37, pp. 5, 6, 9, 11.

Having set forth the positions of the parties, the Court will proceed with its review and analysis of the disputed issues raised in the Plaintiff's motion in this matter.

**II.    Standard of Review**

Federal Rule of Civil Procedure ("Rule") 33 allows a party to serve another party written interrogatories which, "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Rule 33 allows a party to ask interrogatories and request production to the extent of Rule 26(b).

Discovery of documents, electronically stored information, and tangible things is governed by Rule 34. Rule 34 allows a party to request the production of "any designated documents or electronically stored information" or "any tangible things." Fed. R. Civ. P. 34(a)(1).

Rule 30 governs the requirements for depositions by oral examination, allowing a party to "depose any person, including a party, without leave of the court" except in certain cases where the parties have not stipulated to the deposition and if the deponent is confined in prison. Fed. R. Civ. P. 30(a)(1)-(2). Generally, notice for a deposition requires that the party requesting deposition "give reasonable written notice to every other party.... stat[ing] the time and place of the deposition and, if known, the deponent's name and address." Fed. R. Civ. P. 30(b)(1). The noticing party must also state the method to be used for recording the testimony. Fed. R. Civ. P. 30(b)(3).

"Rule 30(b)(6) allows parties to obtain testimony from a corporation, provided the party describes with reasonable particularity the matters for examination." *Mike Hooks Dredging Co., Inc. v. Eckstein Marine Service, Inc.*, No. 08-3945, 2011 WL 2559821, at *1 (E.D. La. June 28, 2011) (Berrigan, J.) (citing Fed. R. Civ. P. 30(b)(6)). Thereafter, the named organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6); *id.; see also*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103, at 33 (2d ed. 1994)) ("Obviously it is not literally possible to take the deposition of a corporation; instead ... the information sought must be obtained from natural persons who can speak for the corporation.").

As the Fifth Circuit has explained:

> [T]he deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters. [T]he duty to present and prepare a

> Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*Brazos River Auth.*, 469 F.3d at 433 (internal quotations and citations omitted).

Rule 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Federal Rule of Civil Procedure 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: ... (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4); (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

A motion to compel under Rule 37(a) must also "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 31(a)(1).

**III. Analysis**

    **A. Lawsuits and Grievances-Interrogatory No. 15**

The Plaintiff argues that the Defendant's response to Interrogatory No. 15 is deficient. R. Doc. 25-1, p. 6. Interrogatory No. 15 asks the Defendant to describe in detail "all discrimination

4

charges, lawsuits, and complaints, including internal complaints and grievances, made against you between 2007 and the present." R. Doc. 25-4, p. 8. It further seeks the identity of the complaining party, the agency or court where the charges or suit was filed, the date of the complaint or charge, the identifying number assigned to the matter, the acts of discrimination alleged, and the disposition of the matter. *Id.* at p. 9. Plaintiff states that she seeks this information to show a pattern of discrimination. R. Doc. 25-1, p. 6.

With respect to Interrogatory No. 15 the Defendant argues that the Plaintiff has not articulated a sufficient basis for the information to be relevant. R. Doc. 37, p. 7. Defendant argues that this information does not serve as evidence of any fact she has to prove with respect to her claims since Defendant contends the Fifth Circuit has foreclosed the use of pattern or practice evidence in single plaintiff cases. *Id.* As such, the Defendant contends the ten-year period of discovery can only constitute a fishing expedition. *Id.*

Further, the Defendant argues that Plaintiff was only employed for one year. According to the Defendant, reports back to 2007 would not make any fact or consequence more or less probable with respect to Plaintiff's burden of proof under the *McDonnell Douglas* burden-shifting framework, the request seeks information that is neither material nor relevant, and that Interrogatory No. 15 is not limited to gender or disability discrimination, limited to the same supervisors or decision-makers, or a reasonable timeframe before the alleged discrimination. *Id.* at pp. 7-8.

During oral argument, counsel for the Plaintiff stated that they had agreed to revise Interrogatory No. 15 and send the revised response to Defendant. The Plaintiff indicated that the motion with respect to this Interrogatory had been resolved subject to the revision and response. Therefore, the motion with respect to this interrogatory is moot.

### B. <u>General Objections</u>

Plaintiff states that the Defendant's Initial Responses included three pages of prefatory general objections, which preceded many of its individual responses by reference. R. Doc. 25-1, p. 4. According to the Plaintiff, the Defendant agreed to remove the statement that each response was "subject to" general objections, but when supplemental responses were provided the general objections remained. *Id.*

Plaintiff argues that the general objections are improper, that the Defendant agreed to remove the general objections from its responses, but the Defendant's Supplemental Responses still contain the same general objections. *Id.* at p. 4. According to the Plaintiff, just because the individual responses do not contain the language "subject to" language it does not remove any uncertainty as to whether the documents have been withheld subject to the prefatory general objections and, therefore, those general objections should be removed entirely. *Id.* Plaintiff contends that one of the General Objections was that defendant objects to requests to the extent they require defendant to provide information not within its custody, possession, or control or is not maintained in its ordinary course of business. *Id.* at pp. 4-5. However, Plaintiff states that the boilerplate language of the general objections makes it unclear as to whether documents are being withheld on that basis and if they are being withheld it does not indicate who the defendant claims would have that information. *Id.* at p. 5. Plaintiff seeks an order requiring the Defendant to respond to each discovery request as to whether any information is being withheld because that information is not within the Defendant's control. *Id.*

The Defendant argues that its answers are legally sufficient, that it has revised its original responses to remove all reference to the general objections, and further, indicates that Plaintiff has not identified a supplemental response that is actually unclear. R. Doc 37, pp. 5-6. Defendant argues that it complied with the agreement made at the November 14, 2017 Rule 37 conference to

6

remove any "subject to general objections" language, sent an email confirming what it would do, and stated that if the agreement as memorialized in the email was not consistent with the Plaintiff's understanding to let the Defendant know. *Id.* at pp. 2-3. Further, Defendant states that it has responded and given reasons for its specific objections. *Id.* at p. 6. Finally, Defendant states that in the "spirit of cooperation" it will withdraw the prefatory general objections and state it is not withholding documents on the basis of such objections. *Id.*

The Court, in reviewing the Defendant's Supplemental Responses, finds that the responses contain several pages of prefatory general objections. R. Doc. 25-8, pp. 1-3. Rule 33(b)(4) expressly provides that "the grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). *See Bailey v. Lockheed Martin Corp.*, No. 4:04CV124LN, 2006 WL 1666275, at *1 (S.D. Miss. June 13, 2006) (noting the Federal Rules' prohibition against general objections). General objections also violate Rule 34(b)(2)(B)–(C), which requires that a response to written discovery specify the objection, including the reasons, and further requires that any objection to part of a request specify the objectionable portion. Fed. R. Civ. P. 34(b)(2)(B)–(C).

General objections are not supported in the case law nor do they comply with the requirements of the Federal Rules of Civil Procedure. Therefore, the Defendant is ordered to supplement their discovery responses by removing all general objections no later than fourteen (14) days from the signing of this order.

### C. Email Production-Request for Production No. 24

The Plaintiff states that only a handful of emails responsive to its requests have been produced in this case and Defendant objects to a search of emails because it would require multiple individuals and several months to complete. R. Doc. 25-1, p. 7. Plaintiff indicates that the Defendant proposed limiting this search to five custodians, Kim Hennig, Dione Heusel, Wan Kim,

7

Katherine LeBlanc, and Thomas O'Keefe. *Id.* However, Plaintiff seeks to review the email records of fifteen individuals. *Id.* Plaintiff seeks to add John Lapeyrouse, Richard Peabody, Joe Lewis, Katherine Mearimen, and six individuals from the Franchise Advisory Counsel to the list of custodians. *Id.* at p. 8. Another six proposed custodians are from the Franchise Advisory Counsel, whose emails the Defendant does not maintain. *Id.* at p. 8. Plaintiff has agreed to reduce the number of key players to nine individuals if the six custodians' emails from the Franchise Advisory Council are not possessed or controlled by the Defendant. *Id.*

The Defendant opposes the motion with respect to the production of emails because the request contains no limitations as to subject matter or timeframe and would require information from each and every person who worked at Smoothie King during Plaintiff's employment, whether that person has direct knowledge or substantive information. R. Doc. 37, p. 9. Defendant states they have agreed to search emails for a period from two months before the Plaintiff's employment through the date of the initial demand letter which was June 12, 2015 as to seven custodians. *Id.* Defendant agrees to produce emails with respect to John Lapeyrouse and Richard Peabody, who are listed in the Plaintiff's motion, however, not with respect to Katherine Mearimen or Joe Lewis. *Id.*

The Defendant states that Mearimen is the VP of HR, Education, and Training, and has not been identified as someone with knowledge of the events and circumstances giving rise to the litigation, nor was she employed in this role during the Plaintiff's employment, nor has Plaintiff articulated a basis for her emails being relevant. *Id.* at p. 10

In addition, Defendant argues that General Counsel for Smoothie King, Joe Lewis's emails are not relevant, nor has the Plaintiff shown a particularized reason for the production of those emails or the relevant information she anticipates she may find that would not be subject to attorney-client privilege. *Id.* at p. 11.

During the oral hearing the parties were able to work through their dispute regarding the production of emails in this case. The parties discussed the proposed custodians and search terms for the emails. After much debate the parties agreed to following, which was memorialized on the record before the Court. There will be two searches with respect to the email production in this case. They agreed to the scope of the searches as follows:

1. **Search Number 1**

The first search will involve all emails between, to and from, Kim Hennig and any one or more of the following custodians: Dione Heusel, Wan Kim, John Lapeyrouse, Katherine LeBlanc, Richard Peabody, and Tom O'Keefe. The temporal scope of that search will be October 20, 2014 through May 27, 2015.

The following search terms shall be used: Parkinson's, disease, disability, illness, disorder, medical, medication, memory, memorization, memorize, forgetful, tremor, prescription, notebook, binder, cheat sheet, software, hire, interview, 100 day plan, Franchise Advisory Council, FAC, unsatisfactory, poor, unprepared, evaluation, duties, responsibility, WIGs, wildly important goals, statistics, "good with numbers," regional meeting, bonus, performance.

The search terms are reflected in Record Document 37-4. The search terms above include performance, as agreed to by the parties and which was not included and in the original list in that document, and the term golf has been stricken from the list as agreed to by the parties.

The parties have also agreed to discuss the addition of search terms should it become necessary as discovery proceeds in this matter. Further, any disputes regarding the emails of Wan Kim will be brought before the Court so a decision can be made on those disputes.

2. **Search Number 2**

The second search will involve all emails between, to, and from any one or more of the following custodians: Dione Heusel, Wan Kim, John Lapeyrouse, Katherine LeBlanc, Richard

Peabody, and Tom O'Keefe. The temporal scope of this search shall be July 1, 2014 through June 12, 2015.

The search will involve the use of the terms "Kim Hennig" and/or "Kim H" and/or "Hennig" plus any one of the following terms: Parkinson's, disease, disability, illness, disorder, medical, medication, memory, memorization, memorize, forgetful, tremor, prescription, notebook, binder, cheat sheet, software, hire, interview, 100 day plan, Franchise Advisory Council, FAC, unsatisfactory, poor, unprepared, evaluation, duties, responsibility, WIGs, wildly important goals, statistics, "good with numbers," regional meeting, bonus, performance.

The search terms are reflected in Record Document 37-4. The search terms above include performance, as agreed to by the parties and which was not included and in the original list in that document, and the term golf has been stricken from the list as agreed to by the parties.

The parties have also agreed to discuss the addition of search terms should it become necessary as discovery proceeds in this matter. Further, any disputes regarding the emails of Wan Kim will be brought before the Court so a decision can be made on those disputes.

As was agreed to by the parties on the record and memorialized in this order, the Defendant shall provide an estimate as to when the emails will be produced by January 8, 2018. In addition, the parties shall enter into an ESI Protocol by January 12, 2018.

**D. Deposition Notice**

Plaintiff contends that the Defendant has not confirmed availability of its corporate deponents for a deposition pursuant to Rule 30(b)(6). R. Doc. 25-1, p. 9. Plaintiff states that she requested the Defendant propose dates for the deposition on September 11, 2017, and on September 28, 2017, she provided a draft notice of deposition. *Id.* According to the Plaintiff, on November 27, 2017, she again requested dates for a corporate deposition and provided a revised draft of the corporate notice. *Id.* During the December 6, 2017, telephone conference Plaintiff

states that the Defendant intended to object to topics in the corporate notice, but no objections have yet to be provided and no proposed dates have been provided. *Id.* Further, Plaintiff contends that the parties have tentatively identified January 18-19, 2018, as possible dates for the corporate deposition when the attorneys are available, however, no witness has been designated and no dates of witness availability have been provided. *Id.* at p. 9.

The Defendant opposes the deposition notice on the grounds that it is overly broad, unduly burdensome, duplicative, and irrelevant. *Id.* According to the Defendant, its objections to the November 27, 2017, deposition notice was sent to the Plaintiff on December 15, 2017, which they attached to their opposition. The Defendant argues that the topics are overreaching, irrelevant, and duplicative and further fail to meet the reasonable particularity requirement of Rule 30(b)(6). *Id.* at pp. 11-12. Defendant wishes to have the proposed topics and subtopics limited by a relevant timeframe, supervisor, job type and type of discrimination. *Id.* at p. 12.

The Court finds that the Plaintiff provided a Notice of Deposition to the Defendant on November 27, 2017. R. Doc. 25-13. The Notice provided seven topics of inquiry with some topics containing sub-parts. The Defendant objected to the notice as written. During the oral hearing the parties worked to resolve the disputes with respect to the deposition notice.

The parties reached an agreement with respect to the notice of the deposition in this case. R. Doc. 25-13. The parties memorialized their agreement on the record before the Court. This Court's order, therefore, reflects the agreement between the parties.

Notice Topic 1 shall be stricken with the exception of EEOC compliance during the dates of July 2014 through June 2015.

Notice Topics 2 and 3 shall be stricken from the notice of deposition.

Notice Topic 4 shall remain, however, the terms "including but not limited to" shall be removed from the notice. Further, the inquiry as to this topic will be limited to the scope of the Plaintiff's employment with the Defendant.

Notice Topic 5 shall be restated by Plaintiff for clarity as to what will be covered at the deposition.

Notice Topic 6 shall be restated to read "[a]ll facts concerning defendant's responses to the plaintiff's discovery requests." Parts A, C, E, and F, shall remain, however, sub-parts B and D shall be stricken. Further, with respect to part F, the counsel for the Defendant shall inquire as to whether the Defendant had a BYOD policy. The scope of this topic shall be limited in temporal scope from July 2014-July 2015.

Notice Topic 7 shall be restated by the Plaintiff to clarify what the "circumstances surrounding Ms. Hennig's termination on May 27, 2015" meant with respect to the deposition.

As was further agreed and memorialized on the record, the Plaintiff shall revise their Notice of Deposition by January 12, 2018. The Defendant shall provide dates for the corporate deposition by January 19, 2018.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Compel Responses to Kim H. Hennig's First Set of Discovery Propounded on Smoothie King Franchises Inc. and to Compel the Setting of Depositions (R. Doc. 25)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that with respect to Interrogatory No. 15 the motion is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that with respect to the general objections the motion is **GRANTED** and the Defendant will revise and supplement all of its discovery responses by removing all general objections no later than fourteen (14) days from the signing of this order.

**IT IS FURTHER ORDERED** that the parties shall adhere to their agreement regarding email production in the case as memorialized in this order. The Defendant shall provide an estimate as to when the emails will be produced by January 8, 2018. The parties shall enter into an ESI Protocol by January 12, 2018.

**IT IS FURTHER ORDERED** that the parties shall adhere to their agreement with respect to the Notice of Deposition as memorialized in this order. The Plaintiff shall revise their Notice of Deposition by January 12, 2018. The Defendant shall provide dates for the corporate deposition by January 19, 2018.

New Orleans, Louisiana, this 12th day of January 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**